

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 25S-JD-198



FILED

Nov 21 2025, 10:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## In the Matter of the Honorable Dale W. Arnett, Judge of the Randolph Superior Court,
*Respondent.*

---

Decided: November 21, 2025

Judicial Discipline Action

---

**Per Curiam Opinion**

Chief Justice Rush and Justices Massa, Slaughter, Goff, and Molter concur.

**Per curiam.**

We find that Respondent, the Honorable Dale W. Arnett, Judge of the Randolph Superior Court, committed judicial misconduct through a long pattern of mismanagement, delay, and dereliction of his judicial duties. Respondent repeatedly failed to timely (1) bring defendants before a judicial officer or make probable cause determinations upon defendants' arrests; (2) conduct trials in accordance with Indiana Criminal Rule 4(C); and (3) issue judgments of conviction, sentencing orders, abstracts of judgment, and other orders in criminal and domestic relations cases. Respondent also failed to accurately monitor court-ordered bond payments.

This matter is before us on the Indiana Commission on Judicial Qualifications' ("Commission's") "Notice of the Institution of Formal Proceedings and Statement of Charges" against Respondent. The parties jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating to the below facts and agreed sanction—Respondent's resignation from office and a permanent ban from judicial service.

# Procedural Background and Facts

Respondent took office as judge of the Randolph Superior Court on January 1, 2021. He presided over a general jurisdiction docket that included criminal and civil cases. Respondent has been on a leave of absence since April 2025, and a judge pro tempore has been serving in his stead.

In 2024, the Randolph County prosecutor compiled a 13-page list of criminal cases with missing Chronological Case Summary ("CCS") entries, orders, or future hearing dates. Respondent became aware of the list in September or October. The Randolph County clerk, circuit court staff, and various attorneys also notified Respondent that his court reporter was not timely completing case entries and orders.

Despite being alerted to problems in his court, Respondent failed to make any efforts to review these incomplete criminal cases until he received the Commission's Notice of Investigation on March 7, 2025. During its investigation, the Commission discovered additional criminal cases that were missing orders or CCS entries or had no future hearings scheduled. It also discovered prolonged delays in Respondent's issuance of court orders.

*Delayed Appearances*

Indiana law provides deadlines by which anyone arrested must be brought before a judicial officer. Indiana Code §§ 35-33-7-1 and -4 require anyone arrested with or without a warrant to be brought "promptly" before a judicial officer for an initial hearing in court. In most cases, persons released on bond must be brought before a judicial officer for an initial hearing within 20 days, although that deadline is shortened to 10 days for persons arrested for operating a vehicle while intoxicated. *Id.* § -1(b), (c). Anyone arrested for an alleged probation violation and not admitted to bail cannot be held in jail for longer than 15 days without a hearing. I.C. § 35-38-2-3(d).

During its investigation, the Commission discovered 27 cases in which defendants were held in the Randolph County jail for longer than necessary because Respondent failed to set timely hearings for defendants after their arrests. Delays ranged from 15 days to 227 days.

For example, one defendant was held in jail for 227 days—nearly 8 months—without an initial hearing. Two-and-a-half months after the defendant's arrest, the State moved for a hearing. Respondent failed to rule on the motion.

In another case, the defendant was arrested for an alleged probation violation and held without bond for 117 days. The defendant's counsel filed a motion requesting bond, but Respondent failed to set a hearing on the motion for a month. There are no CCS entries as to the hearing, so it remains unclear if Respondent ever held an initial hearing on the alleged probation violation. Similarly, in another case, the defendant was held in

jail without bond for 71 days before Respondent held an initial hearing on the defendant's alleged probation violation.

*Dismissal of Cases*

Under Indiana Criminal Rule 4(C), if a defendant is held on recognizance or otherwise to answer criminal charges for more than a year before trial—and this delay is not attributable to the defendant, court congestion, or an emergency—the criminal charge must be dismissed on the defendant's motion. The Commission identified 10 criminal cases that were dismissed between April 1, 2023, and August 5, 2025, because defendants were not timely tried per Rule 4(C). As of August 5, motions for dismissal under Rule 4(C) were pending in 8 additional cases.

*Missing or Delayed Judgments of Conviction and Abstracts of Judgment*

Indiana Criminal Rule 5.2 requires courts to complete abstracts of judgment for all felony convictions. And I.C. § 35-38-1-31 requires an abstract of judgment when a defendant is committed to the Department of Correction ("DOC").

During its investigation, the Commission identified 90 cases with missing judgments of conviction, sentencing orders, and/or abstracts of judgment, or in which there were significant delays in Respondent issuing these orders, judgments, or abstracts. The delays ranged from 31 days to 798 days.

For example, in Case No. 207, Respondent presided over a change of plea hearing on April 17, 2023. Despite several inquiries from the defendant's counsel over the next 2 years, Respondent still had not issued a sentencing order as of April 27, 2025.

In Case No. 480, Respondent held a change of plea hearing on March 14, 2024, but had still not issued a sentencing order when he took a leave of absence in April 2025, over a year later. Similarly, Respondent presided over a change of plea hearing in Case No. 129 on October 29, 2024, but failed to issue a sentencing order until February 25, 2025. In another case, Respondent's failure to issue a sentencing order prevented the defendant from reporting to jail on the weekends, as his sentence required.

Missing sentencing orders caused further confusion when defendants were charged with violating their probation or home detention, but the case dockets did not contain orders placing the defendants on probation or home detention in the first place. In one case, the Randolph Superior Court did not issue a sentencing order until 330 days after the State petitioned to revoke the defendant's probation.

And Respondent failed to issue abstracts of judgment for several defendants sentenced to the DOC, which delayed the defendants' placement in prison and participation in rehabilitative programs. In Case Nos. 537 and 225, Respondent failed to issue sentencing orders for 10 months and two-and-a-half years, respectively, after the defendants' sentencing hearings.

### Missing Orders and Entries in Criminal Cases Resulting in Delays

In early 2024, the Randolph County prosecutor began regularly filing motions to set initial hearings. In some cases, the State had to file several motions or request new hearings because the CCS did not contain entries for scheduled hearings. Respondent's delays in setting future court dates ranged from 21 days to 1,417 days.

For example, the State charged the same defendant with child exploitation and possession of child pornography in Case No. 542 and possession of methamphetamine and possession of a narcotic drug in Case No. 544. Both cases were set for a pretrial conference on May 23, 2024, and a jury trial on June 12, 2024. But neither CCS contains entries for either date, nor future hearing dates. The prosecutor's office requested status conferences and trial dates, but Respondent took no action on those motions.

In another case, the State charged a defendant with unlawful possession of a syringe and obstruction of justice on November 15, 2024. The State filed no less than 3 motions requesting an initial hearing and trial date. Yet, Respondent did not make a probable cause finding until January 23, 2025, did not schedule an initial hearing until March 4, 2025, and did not set a trial date.

In still another case, the State charged a defendant with auto theft on February 10, 2023. On March 24, 2023, Respondent ordered the defendant released but did not set any future dates. Despite 3 motions from the State, Respondent did not hold an initial hearing until January 23, 2025, or 709 days after he found probable cause.

Respondent delayed issuing other orders in many criminal cases. In Case No. 411, Respondent failed to act on the defendant's jury trial demand for 118 days. And in Case No. 005, Respondent failed to issue a warrant until 50 days after community corrections filed a report alleging the defendant failed to report to home detention.

*Failure to Monitor Bond Payments*

Respondent had a practice of ordering defendants released from jail on their own recognizance but then requiring bond payment as a condition of release. In some instances, Respondent set up weekly payment plans for defendants. Respondent and his court staff failed to monitor whether the defendants were making payments pursuant to the terms of the release conditions.

For example, in Case No. 444, Respondent issued an arrest warrant for the defendant even though the defendant had paid his bond. The defendant then remained in jail for 31 days before the defendant was brought before Respondent and the error was addressed.

In Case Nos. 347 and 435, Respondent ordered the defendants to pay bonds, but neither CCS contains entries nor notations regarding the defendants' payments.

And in another case, Respondent failed to issue a timely arrest warrant for the defendant despite the defendant's failure to pay a $500 bond. Respondent issued the warrant more than 3 months after releasing the defendant.

*Missing Entries and Orders in Civil Cases*

Respondent's case mismanagement was not limited to his criminal docket. For example, in one marital dissolution case, Respondent did not timely hear or rule upon a motion for provisional relief. In another case,

the State filed a motion to modify child support on December 13, 2023. Despite conducting a hearing in January 2024, Respondent failed to issue an order on the motion until the following October. And in still another domestic relations case, Respondent conducted a rule-to-show-cause hearing in May 2024 regarding one parent's failure to pay child support expenses. But he neglected to issue an order on the petition until February 2025.

# Discussion

Respondent agrees that his conduct violated the following Code of Judicial Conduct provisions:

- Rule 1.1, requiring judges to comply with the law, including the Code of Judicial Conduct;
- Rule 1.2, requiring judges to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and avoid impropriety and the appearance of impropriety;
- Rule 2.5(A), requiring judges to perform judicial and administrative duties competently, diligently, and promptly;
- Rule 2.5(B), requiring judges to cooperate with other judges and court officials in the administration of court business; and
- Rule 2.12(A), requiring judges to require court staff, court officials, and others subject to the judge's direction and control to act in a manner consistent with the judge's obligations under the Code of Judicial Conduct.

The parties believe that a permanent ban from judicial service with Respondent retaining his law license is an appropriate sanction. We agree.

"[J]udicial discipline proceedings are designed not simply to punish wrongdoing. Rather, they also help to ensure that judges are fit for judicial duty, restore public confidence in the administration of justice, and preserve the integrity and independence of the judiciary." *Matter of Kouros*, 816 N.E.2d 21, 31 (Ind. 2004) (citations omitted). In other words, judicial discipline proceedings "safeguard the bench and public from

those who are unfit." *Matter of Hawkins*, 902 N.E.2d 231, 244 (Ind. 2009). We find these observations particularly apropos here.

Respondent's misconduct directly harmed criminal defendants, other criminal justice stakeholders, and civil litigants. In at least 10 cases, criminal charges were dismissed due to Respondent's delays in scheduling trial. And Respondent's misconduct was pervasive rather than isolated, impacting over 100 cases. Despite being alerted to the delays and missing orders, Respondent failed to take corrective action. The significant sanction proposed recognizes the seriousness and breadth of Respondent's violations while protecting the judiciary and the Randolph County community at large.

Our precedent also supports the sanction. The judge-respondent in *Matter of Brown* engaged in serious case mismanagement, resulting in delayed rulings, lost exhibits, and at least 10 defendants remaining in jail after they should have been released. 4 N.E.3d 619, 624 (Ind. 2014). Although the respondent in *Brown* committed other acts of misconduct not relevant here, her misconduct—like Respondent's—violated several Judicial Conduct rules and negatively affected parties "and others interested in the efficient operation of the criminal justice system." *Id.* at 630.

And in *Kouros*, the judge-respondent failed to issue written sentencing orders in at least 35 felony cases. 816 N.E.2d at 22–23. During its investigation, the Commission discovered 330 files awaiting orders or their return to the clerk's office. As in *Brown* and here, the respondent was notified of the concern but failed to correct the issues. This Court ultimately removed the respondents in *Kouros* and *Brown* from office, rendering both ineligible from pursuing judicial office. *See* Admission and Discipline Rule 25(III)(C).

But this Court permitted the respondents in *Kouros* and *Brown* to retain their law licenses. Likewise, we agree with the parties that there are sufficient mitigating factors to allow Respondent to also retain his law license. Before taking the bench, Respondent had no discipline throughout his lengthy career. He has accepted responsibility for his misconduct and has cooperated with the Commission throughout these proceedings. *See*

*Matter of Elkin*, 266 N.E.3d 215, 220 (Ind. 2025) (allowing the respondent to retain his law license despite his permanent ban from judicial service due to the parties' cited mitigating circumstances).

# Conclusion

The Honorable Dale W. Arnett shall be permanently banned from judicial service. Consistent with the parties' conditional agreement, Respondent shall tender his resignation to the Governor and leave office on or before November 26, 2025. From that time forward, he will no longer be eligible for judicial service, including as a judge pro tempore, temporary judge, or private judge. The Special Masters appointed in this case are discharged, and the Court commends them for their conscientious service in this matter.

Rush, C.J., and Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEYS FOR RESPONDENT
Donald K. McClellan
McClellan & McClellan
Muncie, Indiana

James J. Bell
Evan D. Carr
Hoover Hull Turner, LLP
Indianapolis, Indiana

ATTORNEYS FOR INDIANA COMMISSION ON
JUDICIAL QUALIFICATIONS
Adrienne L. Meiring, Counsel to the Commission
Stephanie K. Bibbs, Deputy Director of Litigation
Jill E. Esenwein, Staff Attorney
Mark R. Conner, Staff Attorney
Indianapolis, Indiana